UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ELLIOTT J. SPIEHLER, JR.                CIVIL ACTION

VERSUS                                  NO. 04-869

JO ANNE B. BARNHART                     SECTION: "B"(2)

## OPINION

### Nature of Motion and Relief Sought

Pursuant to 42 U.S.C. 405(g), Elliott J. Spiehler, Jr. seeks judicial review of the decision of the Commissioner of the Social Security Administration (Commissioner), denying his claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI).  The matter was referred to Magistrate Judge Wilkinson, who recommended that Spiehler's claim be dismissed. Spiehler filed timely objections to the recommendation.  Spiehler prays for reversal of the Commissioner's ruling or, in the alternative, leave to introduce new evidence.

### Background

#### Procedural History

Spiehler filed an application for DIB and SSI on December 12, 2001.[1]  He alleged disability because of pain, tremors, and

---

[1] Spiehler also filed an application for DIB and SSI in 1995.  The 1995 claim was denied.  (Tr. 33, 206).



psychological problems.² (Tr. 37, 166, 220). His application was denied, and he requested a hearing before an Administrative Law Judge (ALJ). The ALJ denied the application on November 12, 2003. The decision became final when the Appeals Council denied review on April 24, 2003. (Tr. 3-5).

Facts of Case

Spiehler is a 48 year-old man with a high school education and 26 hours of college credit from Loyola University. ®. 9 at p.1). His past work experience includes 13 years as a letter carrier (1984-1997), one year as a shipping clerk (1999-2000), four months as a police officer (2000), and four months as a security officer (2001). (Tr. 56). At the time of his hearing with the ALJ, Spiehler was working 10 hours per week installing water filtration systems.³ Spiehler stated, however, that he had recently been demoted for poor performance. (Tr. 212).

Spiehler was diagnosed with familial tremors by Dr. Kenneth Combs in 2002.⁴ (Tr. 170). Spiehler testified he has always had tremors over his entire body, but the shaking was minor until

---

²Spiehler complained of memory and concentration problems related to his pain. He also has a history of treatment for depression and anxiety. (Tr. 166)

³Spiehler, however, was not working at the time he filed an application for DIB and SSI.

⁴A familial tremor, also called an essential tremor, is an involuntary trembling common in one's family. It usually begins around age 50 and is characterized by a fine rapid tremor of the hands, followed by tremors of the arms, tongue, head, legs, and trunk. Dorlands Illustrated Medical Dictionary 1748 (27th ed. 1988).

around age forty. (Tr. 217). Today, Spiehler says the tremors are severe in his right hand and interfere with his normal functioning.

Dr. Leon Weisberg, Director and Professor of Tulane Neurology, reported that Spiehler's tremors do not interfere with his daily living activities. (Tr. 173). Weisberg noted that Spiehler was able to write, feed himself, and drive. (Tr. 172). Weisberg found no indications of Parkinsonism. *Id.* He concluded that Spiehler's tremors are not severe and are successfully being treated with Klonopin. Indeed, Spiehler even reported positive results from Klonopin, stating, "it even improved my tennis game." *See* Pl.'s Br. at 30.

Spiehler injured his neck in a fight in 1996. (Tr. 171). The injury caused pain and numbness in both of his arms. He had a cervical fusion later that year, and his symptoms "markedly improved" for the next few years. (Tr. 101, 171). He then suffered a fall, which required a second surgery to insert metal in his neck. (Tr. 174). Spiehler testified that he now suffers from constant pain. (Tr. 220). He said that the pain affects his concentration and prevents him from maintaining a full-time job. (Tr. 221).

Spiehler was evaluated by Dr. Mary Mathai in March 2002 for pain related to his neck injury. Matai noted that sitting or lying causes numbness in Spiehler's hands but reported a normal range of motion and muscle strength in Spiehler's neck, shoulders, elbows,

wrists, and hands. (Tr. 175). Mathai concluded that Spiehler "is not a candidate for any work involving heavy lifting, pulling, pushing and overhead activities, [but the] patient does not need any assistive device for ambulation." (Tr. 176).

Spiehler has a history of treatment for depression and anxiety. He was hospitalized for paranoia and grandiosity in 1995. He attempted suicide after being fired by the Post Office in the late 1990's. (Tr. 13, 157, 234). Spiehler has been prescribed several medications for anxiety and depression- Prozac, Klonopin, Lorazepam, Xanax, and Cylert.

Dr. Richard Strobach was Spiehler's psychiatrist from 1995-1996. Strobach, who prescribed Xanax as well as other medications, reported that Spiehler was "very selective with the truth." (Tr. 166). Strobach concluded that Spiehler was abusing his prescriptions, lying about his symptoms, exacerbating his legitimate problems by failing to follow prescribed treatment plans, and was probably an alcoholic.[5] (Tr. 166-168). In addition, Spiehler was evaluated by the state agency's psychological consultant. The consultant found that Spiehler did not meet the criteria for presumptive disability based on affective disorders or anxiety-related disorders. (Tr. 178-199).

---

[5] Spiehler testified that he drinks the equivalent of about eight 12-ounce beers a day. (Tr. 225). The ALJ, however, did not found that Spiehler's alcohol and drug abuse were material to his disability claim. (Tr. 14).

Spiehler contends that (1) the Commissioner's findings are not supported by substantial evidence and, in the alternative, (2) he should be granted leave to introduce new evidence.

Defendant Barnhart responds that substantial evidence supports the Commissioner's findings. Defendant argues that Spiehler exaggerated his symptoms and that his legitimate symptoms are being successfully treated. Defendant did not respond to Spiehler's motion for leave to introduce new evidence.

## Law and Analysis

### Denial of Disability

Judicial review of the Commissioner's decision is governed by 42 U.S.C. 405(g). The scope of appeal is limited to determining whether the Commissioner's decision was supported by substantial evidence and whether the appropriate legal standards were applied. *Id.*; *Waters v. Barnhart*, 276 F.3d 716, 716 (5th Cir. 2002). Substantial evidence is more than a scintilla but less than a preponderance. It is sufficient evidence for a reasonable mind to reach a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Ripley v. Charter*, 67 F.3d 552, 555 (5th Cir. 1995). Despite this court's limited function, it must review the record in its entirety to determine the reasonableness of the Commissioner's decision. *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990).

A claimant is disabled, thus eligible for DIB and SSI, if he can prove that he is unable to engage in substantial gainful

employment due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A). The Commissioner applies a five-step process to determine whether a claimant is disabled:[6]

1. a claimant currently engaged in substantial gainful activity is found not disabled;

2. a claimant without a *severe* mental or physical impairment is not disabled;

3. a claimant whose impairment meets or is medically equivalent to a list of impairments in the regulations is considered presumptively disabled;

4. a claimant capable of doing work he has done in the past is not disabled; and

5. if a claimant is unable to do his former work, then the claimant's age, education and work experience are considered to see whether he or she can meet the physical and mental demands of a significant number of jobs in the national economy.

The inquiry ends if the Commissioner finds at any stage that the claimant is or is not disabled. The claimant has the burden of proving the first four parts of the inquiry; if the claimant is successful, the burden shifts to the Commissioner for the fifth step. *Morris v. Bowen*, 864 F.2d 333, 335-36 (5th cir. 1988); *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990). The Commissioner is assisted at this stage, however, by guidelines reflecting vocational patterns in the national economy. 20 C.F.R. § 404, Subpt. P, App. 2, §§ 200.00-204.00, 416,969 (2003). Based

---

[6]*See* 20 C.F.R. § 404.1520

on the claimant's age, education, and capacity for work, the guidelines indicate whether significant work is available for the claimant. *Id.*

### ALJ's Relevant Findings

The ALJ determined that Spiehler is not currently engaged in substantial gainful employment. (Tr. 12). Although the ALJ found Spiehler's impairments to be medically "severe," the judge concluded that "the evidence simply does not substantiate a presumptive disability determination." (Tr. 13). (Tr. 16). The ALJ found that Spiehler's subjective complaints of pain and functional limitations related to his neck injury were "not supported by the evidence as a whole and therefore lack credibility." (Tr. 13). Although Spiehler's tremors do produce some legitimate limitations that prevent him from returning to his former work, the ALJ concluded that the plaintiff can perform the full range of light work.[7] Based on the plaintiff's age, education, and capacity for light work, the Medical-Vocational Rules dictate a determination of not disabled.[8]

Two stages of the analysis are relevant to this appeal. First, if substantial evidence does not support the ALJ's finding

---

[7] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in the category when it requires a good deal of walking or standing or when it involves sitting most of the time with some pushing and pulling of arm controls. 20 C.F.R. § 416.967.

[8] *See* Medical-Vocational Rule 202.21; 20 C.F.R. Part 404, Subpart P, App. 2, Table No. 2.

that Spiehler is not presumptively disabled (third stage), then the Commissioner's decision should be reversed. Second, if substantial evidence does not support the ALJ's finding that, despite Spiehler's "severe" impairments, other work in the economy exists in significant numbers (fifth stage), then Spiehler is entitled to disability.

Presumptive Disability

Spiehler does not allege presumptive disability based on any specific impairment listed in the regulations. Nevertheless, the ALJ's conclusion that Spiehler does not meet the requirements for presumptive disability is supported by substantial evidence. The ALJ found that Spiehler did not meet the severity requirement under Listings 1.00, 11.17, and 12.03. (Tr. 13). These Listings all require some type of severe objective dysfunction- limitation in movement, evidence of nerve root compression, or spino-cerebeller degeneration- that Spiehler is lacking.

Dr. Mathai noted that Spiehler has a normal range of motion and muscle strength in his neck, shoulders, legs, and hands. (Tr. 175). Spiehler also had a normal pin-prick, normal heel and toe walking, and was observed as an "alert and oriented," "well built male." (Tr. 175). Further, Dr. Weisberg stated that Spiehler's tremors are being successfully treated and do not interfere with his ability to work. (Tr. 173) Indeed, Weisberg reported that Spiehler "feels he can work." (Tr. 172). Therefore, substantial

evidence exists to support the ALJ's conclusion that Spiehler is not presumptively disabled by his neck condition and tremors.

Spiehler was evaluated by a defense consultant for psychological disorders. The consultant, Dr. Doris E. LeBlanc, found that Spiehler did not meet the criteria for Sections 12.04 (depression) or 12.06 (anxiety). (Tr. 188-189). Substantial evidence therefore exists to support the ALJ's conclusion that Spiehler is not presumptively disabled by his depression and anxiety.

Medical-Vocational Guidelines

Based on his age, education, and capacity for light work, the Regulations indicate that Spiehler is eligible for a significant number of jobs in the national economy. 20 C.F.R. Pt. 404, Subpt. P, App. 2. Spiehler argues that this conclusion is based on the invalid presumption that he is capable of doing light work. However, the objective evidence- the reports of treating and consulting physicians and Plaintiff's unrestricted daily activities- do not support Spiehler's subjective claims of pain and incapacity.

The ALJ evaluates the credibility of the witness, *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002). "These are precisely the kinds of determinations that the ALJ is best positioned to make." *Falco*, 27 F.3d at 164. This court does not sit in *de novo* review, and the ALJ's conclusions are due considerable deference.

*Johnson v. Bowen*, 864 f2d 340, 343-44 (5th Cir. 1988). The ALJ must, however, furnish an explanation of his reasons for finding plaintiff not entirely credible. *Falco*, 27 F.3d at 163-64.

Evidence in the record strongly suggests that Spiehler exaggerated his symptoms. Dr. Strobach, Spiehler's psychiatrist, noted, "perhaps the single most important thing about Mr. Spiehler you should know is that he is very selective with the truth." (Tr. 166). Dr. Strobach suspected that Spiehler was manifesting symptoms that he read about or saw on television. *Id*. For example, Spiehler "saw a show on adult attention deficit disorder and decided that this was his problem." (Tr. 166).

A claimant's activities of daily living are a proper consideration in gauging his credibility, *Chaparro v. Bowen*, 815 F.2d 1008, 1011 (5th Cir. 1987), and Spiehler's lifestyle suggests that his pain and functional limitation are not as acute as he claims. Given the severity of Spiehler's complaints, it is doubtful that he could work 10 hours per week, walk and stand without problems, maintain normal social interactions, and even play tennis. (Tr. 212, 193, 221). The ALJ's conclusion that Spiehler's subjective complaints are not entirely credible is therefore reasonable and supported by substantial evidence.

<u>Spiehler's Motion for Leave to Introduce New Evidence</u>

Spiehler objects to the Magistrate's denial of his motion for

leave to introduce new evidence. (R. 11). He says he recently discovered information that supports his testimony that he filed an earlier application for disability benefits. Spiehler says he also recovered medical records that document his cervical fusion in 1996.

This court may remand the case to the Commissioner for consideration of *new* evidence only upon a showing that (1) the evidence is material and (2) there is good reason for failing to produce the evidence in prior proceedings. 42 U.S.C. 405(g). The court may not, however, issue factual findings on new evidence. *Haywood v. Sullivan*, 888 F.2d 1463, 1471 (5th Cir. 1989).

Spiehler's evidence is neither new, material, nor can he show good cause for failing to present it to the Commissioner. At his hearing with the ALJ, Plaintiff mentioned that he had filed an earlier application. (Tr. 206). The ALJ noted, "it's not unusual for us to miss an earlier application." *Id*. The existence of an earlier application was, therefore, a consideration in the ALJ's decision. Even if the ALJ had not considered the existence of Plaintiff's prior application, Spiehler's motion for leave to introduce new evidence should be denied. The existence of a prior application is simply irrelevant to Spiehler's *current* disability.

Spiehler's cervical fusion is also well-documented in the record. (Tr. 174, 177-8). When Spiehler mentioned additional

records regarding his neck surgery, the ALJ replied, "we know you've had the surgeries...my assumption is you're telling me the truth." (Tr. 210-211). Furthermore, the ALJ specifically addressed Spiehler's cervical fusion in his decision. (Tr. 15). Plaintiff's new evidence adds nothing that is not already documented in the record.

**Conclusion**

The ALJ's determination that Spiehler is able to work is supported by substantial evidence in the record. Medical evidence indicates that the plaintiff's tremors are being successfully treated with Klonopin. Medical examiners also concluded that Spiehler's neck injury and psychological problems are not severe. Moreover, Spiehler's purported new evidence is already well-documented in the record. For the foregoing reasons, the motion for leave to introduce new evidence is **DENIED** and the complaint is **DISMISSED WITH PREJUDICE.**

New Orleans, Louisiana, this 4th day of August, 2005.

_____
UNITED STATES DISTRICT JUDGE